Chambliss vs. Phelps.

---

LAWSON G. CHAMBLISS, plaintiff in error, vs. OLIVER C. PHELPS, defendant in error.

1. A homestead is subject to an execution founded upon a debt contracted for the purchase-money, and the fact that the debt has been transferred to a third person does not change that liability.

2. Although a judgment be dormant under the statute, and has, therefore, lost its lien, as a judgment, it is still a subsisting debt, and the judgment may be revived by *scire facias*, or by suit.

3. The Acts limiting the time within which judgments may be revived, were suspended by the Acts suspending the Statute of Limitations, to-wit: from the 30th November, 1861, to the 21st July, 1868, when civil government was practically restored in this State.

4. A creditor, though his claim may be one of the exceptions provided for in the Homestead Act, can not set it up to prevent the laying off of the homestead. Other conditions having been fulfilled, the homestead ought to be set off, leaving to the creditor his right to go on under the exceptions at his discretion.

5. A mortgage, given by the debtor, is not one of the exceptions provided by the Constitution, to which the homestead for his family is liable. WARNER, J., dissenting.

Homestead. Constitutional law. Dormant Judgment. Before Judge GREEN. Monroe Superior Court. April Term, 1869.

Chambliss petitioned the Ordinary of said county for the exemption from his debts of certain personalty and certain land as his homestead. In obedience to the order of the Ordinary the county surveyor laid off certain five hundred and one acres of land in said county as said homestead, and certified that they were not worth over $2000 00 in specie. Phelps, by his attorney, appeared and objected to the Ordinary approving said exemption, upon the following grounds:

Because he, Phelps, was the holder and owner of a *fi. fa.*, issued from the Superior Court of said county, in favor of Archibald Lary against said Chambliss for $887 53 principal, $3 58 interest, to the date of the judgment, to-wit: the 5th of September, 1856, and interest since, up to date, which judgment was founded upon a note given to said Lary for the purchase-money of said land; and also owner of a mortgage *fi. fa.*, founded upon the foreclosure of a mortgage for $2000 00, made by said Chambliss on said land to said Phelps on the 8th of November, 1858. The rule absolute was taken in said county in August, 1867. Further, he objected because Chambliss had no wife nor minor child dependant upon him as the head of a family.

The Ordinary, on the 26th of January, 1869, approved the exemption of the homestead as laid off by the surveyor, and Phelps appealed to the Superior Court.

At the trial Chambliss' attorneys read in evidence all the said proceedings before the Ordinary, and closed. Phelps' attorney then offered in evidence his said *fi. fa.* in favor of Lary, heretofore partially described. Said *fi. fa* was issued on the 22d of November, 1856. The only entries thereon showed the following facts: On the 22d of November, 1856, Phelps paid Lary $903 43, and he transferred said *fi. fa.* and judgment to Phelps. On the 27th of February, 1869, it was levied on the lands which had been assigned as said homestead. This *fi. fa.* was objected to by Chambliss' attorney because it was apparently dormant. The objection was overruled, and the *fi. fa.* was read in evidence. Said mortgage *fi. fa.* was also read in evidence. It was admitted that the Lary *fi. fa.* was founded upon a note given for the purchase-money of said land, and that Phelps paid for said *fi. fa.*, and the cause was argued before the Judge upon that statement of facts. He adjudged that the said approval of the Ordinary be overruled, and the application for exemption be disallowed, until said two *fi. fas.* were paid.

Chambliss' attorneys assign as error the refusal to reject the Lary *fi. fa.* when offered as evidence, and the decision that the exemption could not be allowed till said *fi. fas.* were paid.

CABANISS & PEEPLES, T. B. CABANISS, for plaintiff in error.

J. S. PINCKARD, for defendant in error.

McCAY, J.

The Constitutionality of the Homestead Law, which is one of the points made in this case, is discussed and decided in the case of *Downer vs. Hardeman,* decided at this term of the Court, and for the reasons there given we made the same decision in this case.

1. It is one of the express exceptions in the Homestead provision of the Constitution, that the Courts shall have jurisdiction to enforce against the homestead, when set apart, a judgment founded on a debt contracted for the purchase-money. See Article VII, section 1, Constitution of 1868. This is no personal privilege of the vendor of the land, but according to the express language of the Constitution, it is a privilege of the *contract,* and goes with it, like the other privileges, into whosever hands it may fall. It is admitted that the judgment of Phelps is founded on a debt contracted for the purchase-money. . We hold, therefore, that *it* may be levied on the property of which it is the consideration, even though it be set off as a homestead to the family of the debtor.

2. Under the decision we have made in the case of *Battle vs. Shivers,* at this term, the *fi. fa.* of Phelps is undoubtedly dormant, but, as is manifest from the reasoning in that case, it is still a judgment, as against the defendant; it has every quality of a judgment, except that it cannot be levied until he has had an opportunity to show that it has been satisfied. It is a dormant, sleeping judgment, and must be revived by *scire facias* before it can proceed to levy and sale. By section 2863 of the Code, it must be revived in three years after it becomes dormant, or it cannot be revived or sued on afterwards. It becomes dead.·

3. By the Act of 1856 it was presumed to be satisfied if allowed to go seven years without an entry, but as we have

held in *Battle vs. Shivers*, that was a Statute of Limitations, and was suspended by various Acts, until it was suspended by the Code.   The provision in the Code limiting *scire facias* and actions upon judgments to three years after they become dormant, is a provision to limit the time within which proceedings shall be commenced in a court of justice, and it is clearly also a Statute of Limitations, and was also suspended by these Acts until the "complete restoration of civil government in this State."  Convention of 1868.   We held in a case at this term, of *Daniel vs. Foster*, that civil government was practically restored on the 22d of July, 1868, and this judgment is a judgment, a record evidence of a debt, until barred.

4.  We do not however agree with the Court in holding that because the homestead is subject to this judgment, after proper steps are taken to put it in active shape, that the homestead can not be laid off.   The Constitution of 1868, Art. "Homestead," expressly provides that such a judgment may proceed against the homestead, though laid off.   The issue allowed to be made up by the Acts of 1868 and 1869, is whether the applicant is such a person as is entitled to a homestead, and whether it is properly and fairly laid off, etc., etc.    When laid off, if the debt sought to be enforced is a judgment founded on a debt contracted for any of the exceptions mentioned, then the homestead is subject to such judgment.

We therefore reverse the judgment in this case on the ground that the existence of this debt, though it is one of the exceptions, is not any reason why the homestead should not be laid off; and on the further ground, that the mortgage mentioned in the order is not one of the exceptions of the Homestead Act.

5.  As to mortgage, we will in this case only say, that it is not one of the exceptions.   Were the Homestead Law a mere Legislative Act, we would doubt much if, secured as the right to sell is by *contract*, it was in the power of the Legislature so to legislate as to take away this express remedy secured by the contract of the parties.   But for the reasons given in *Hardeman vs. Downer*, we hold that the Constitu-

tion of 1868 was made under such circumstances that if this is a violation of the obligation of the contract, it is a violalation that it was in the power of the authority which made that Constitution to commit, and that at any rate it is an evil not in the power of the judiciary department of the Government, State or National, to cure.

Judgment reversed.

BROWN, C. J., concurred as follows :

1. This Court has no jurisdiction to enforce an execution against the homestead which was issued from a judgment to foreclose a mortgage before the adoption of the new Constitution.

2. The homestead is subject to the payment of the purchase-money, whether contracted before or since the Constitution was adopted; and if the judgment for the purchase-money is dormant, but not barred by the Statute of Limitations, the homestead is still bound for its satisfaction, if it is revived within the period allowed by the statute.

3. The execution on the judgment for the purchasemoneyin this case bore date 22d November, 1856, and had no entry upon it by any officer authorized to execute and return the same till the 27th February, 1869. It therefore became dormant on the 22d day of November, 1863.

4. When a judgment becomes dormant the Statute of Limitations begins to run against it, and if proceedings are not commenced to revive it within three years from that date, it is barred.

5. In this case the Statute of Limitations was suspended at the time the judgment became dormant, and it never began to run against the plaintiffs in the judgment, under the various Acts of the Legislature of this State, and the Ordinance of the Convention of 1865, till civil government was fully restored. This was done 21st July, 1868, when the Legislature of Georgia, under the direction of Congress, ratified the amendments made by Congress to the State Constitution, and adopted the 14th Constitutional Amendment.

WARNER, J., dissenting.

I dissent from the judgment of this Court reversing the judgment of the Court below: First, because Chambliss is not entitled to a homestead in the land as against his creditors whose debts were contracted *prior* to the passage of the Homestead Act, for the reasons stated in my dissenting opinion in the case of *Hardeman vs. Downer*, decided during the present term of this Court. Second, if the Homestead Act was Constitutional and valid as against the *prior* contracts of Chambliss, the judgment held by Phelps for the purchase-money of the land, was a valid subsisting lien thereon, as well as his mortgage lien upon the land, both of which created an "encumbrance" which Chambliss was bound to discharge before he is entitled to his homestead under the Act, for the reasons stated in the case of *Kelly vs. Stephens & Connell, executors*, etc., decided during the present term. Phelps' judgment was *not dormant*, for the reasons stated in my dissenting opinion in the case of *Battle vs. Shivers.*

In the case of *Kelly vs. Stephens* the mortgage "encumbrance" of the plaintiff was recognized, and enforced against the homestead claimed by Kelly, by the *unanimous* judgment of this Court, but for different reasons. Perhaps it is owing to the want of proper discrimination, but I have not been able to discover any difference in *principle* between the encumbrance created upon the homestead of Chambliss, by Phelps' mortgage, and that created on the homestead of Kelly by Stephens' mortgage. Both were executed *prior* to the passage of the Homestead Act, and both were *encumbrances* upon the land claimed as a homestead. The majority of the Court hold in this case, as I understand their ruling, that a judgment obtained against the party claiming a homestead, (unless it be for the purchase-money of the land) *prior* to the passage of the Homestead Act, either on the foreclosure of a mortgage, or otherwise, cannot be enforced against the homestead. But in the case of *Kelly vs. Stephens*, before

cited, a judgment on the foreclosure of a mortgage made *prior* to the passage of the Homestead Act, *was enforced* against the homestead, and held to be an *" encumbrance "* thereon, and *rightly* so held, in my judgment. Surely Phelps ought to have the same rule applied to him in this case, so far as it respects *his* mortgage, as was applied to the plaintiff in *that case.* What are the facts in regard to Phelps' mortgage? The mortgage of Phelps is dated the 8th day of November, 1858, and had been foreclosed by the judgment of the Court. What are the facts in relation to Stephens' mortgage? The mortgage held by Stephens was executed on the 3d day of May, 1859, and foreclosed by the judgment of the Court. It also appears from the record, in Stephens' case, that in 1859 one Harrison had a judgment against Kelly, and was about to sell his land in satisfaction thereof, when Thomas W. Thomas loaned Kelly the money to pay off said judgment, took his note and a mortgage on his land to secure the payment of the note given for the money borrowed of Thomas. Afterwards, Thomas W. Thomas assigned the note and mortgage to James Thomas, the plaintiff's testator.

The transaction between Kelly and Thomas W. Thomas does not differ in *principle* from any other similar transaction where money is borrowed, a note given, and a mortgage executed upon land to secure the payment of that note. But it is said the money borrowed by Kelly, from Thomas, was applied to the payment of Harrison's judgment, which, at that time, created an *encumbrance* on the land. The reply is, that the money belonged to Kelly, and he had the right to appropriate it *that way*, or in any other manner he might think proper. Thomas, however, took a *new* security for his money, a *new encumbrance* on the land for the security of his debt, no way different in *principle* from the encumbrance held by Phelps on the land of Chambliss, to secure the payment of *his* debt. But as I understand the ruling of the majority of the Court in this case, if Thomas had advanced the money due on Harrison's judgment to him, and taken an assignment of that judgment, and had kept the

same open and in full force as a valid subsisting judgment, he could not *now* enforce that judgment as an *encumbrance* against the homestead under the provisions of the Constitution of 1868. If Harrison's judgment was an *encumbrance* on the land, at the time the money was loaned by Thomas to Kelly, then it would be an encumbrance on the land *now*, had it been unpaid and kept in full force and effect as a valid subsisting judgment, either in the hands of Harrison or his assignee. In *Stephens'* case this Court held that the mortgage creditor who took a *new* security and a *new* incumbrance on the land, of *inferior* dignity, to that held by Harrison, the judgment creditor, can enforce his encumbrance against the homestead, but in this case the majority of the Court hold, that the original judgment creditor could not have done so if he had made the attempt, with his judgment open and unsatisfied.

How Thomas W. Thomas and his assignees, according to the facts in that case, could stand in any better condition as to the enforcement of their encumbrance against the homestead created by *the act of the parties*, than a judgment creditor whose encumbrance on the land is created *by law*, is beyond my limited comprehension. If Harrison's judgment against Kelly was an " encumbrance " on his land claimed as a homestead, *at the time* Thomas loaned him the money to remove it, then that same judgment, if open and unsatisfied in the hands of Harrison *now*, would be an " encumbrance " on the land claimed as a homestead. If that same judgment being in the hands of Harrison, as a judgment creditor of Kelly, would *not now* be an " encumbrance " on the land claimed as a homestead, then it was *not* an " encumbrance " on the land claimed as a homestead *at the time* Thomas loaned Kelly the money to remove it. If the judgment *was* an " encumbrance " on the land claimed as a homestead *at the time* Thomas loaned Kelly the money to remove it, then, most unquestionably, it would have been an " encumbrance " on the land claimed as a homestead, had Harrison continued to have held that judgment open and unsatisfied, and was *now* attempting to enforce it in his own right as a judgment cred-

itor against Kelly's homestead.  A judgment, in favor of a creditor against the debtor, *is* an " encumbrance" on the land of the debtor claimed as a homestead, or it *is not.*  If Harrison's judgment against Kelly was an " encumbrance" on his land claimed by him as a homestead, and after the removal of which the homestead was liable to the claim of Thomas or his assignees, then the land of *all* judgment debtors claimed as homesteads, is liable for the removal of all *similar* " encumbrances ;" for the *only* " encumbrance" that it is pretended that Thomas *loaned the money to remove in that case,* was an " encumbrance" created by a *judgment* against the defendant, Kelly, who claimed a homestead on the land.  I am of the opinion that the judgment of the Court below should be affirmed.